MURRAY, FERRIS & CO. *v.* R. B. BLACKLEDGE and wife.

The equitable owner of land may maintain an action for its recovery, although the legal estate is in his trustee.

When a change of interest takes place during the progress of a suit, the plaintiff may make the change known, by a supplemental complaint, by which the new owner becomes practically substituted as plaintiff for the former one.

A deed made to O. P. & Co. by the firm name, instead of the individual members of the firm, is not for that reason void. It is a latent ambiguity, which may be explained by parol.

The possession of a mortgagor is not adverse to the possession of the mortgagee, so as to prevent the assignment of the mortgage by the latter.

The negligence of counsel in not objecting, at the proper time, to the reception of incompetent evidence, from which the jury find that the grantor was mistaken when she executed the deed, as to its conveying a certain tract of land, is not necessarily fatal, and will not preclude the presiding Judge from giving judgment, of his own motion, *non obstante veredicto.*

CIVIL ACTION, for the recovery of the possession of land, tried before his Honor, *Judge Clarke,* at the Spring Term, 1874, of CRAVEN Superior Court.

On the trial below, the Court submitted certain issues without instructions to the jury, which, with the finding of the jury thereon, and all other facts relating to the points discussed and decided in this Court, are fully set out in the following opinion of Justice RODMAN.

The jury found the issues for the plaintiffs. Judgment in accordance therewith, and appeal by the defendants.

*Justice, Haughton, Smith & Strong* and *Hubbard,* for appellants.
*Mason, Green, Battle & Son* and *Bryan,* contra.

RODMAN, J. This is an action to recover the possession of

land, begun by H. R. Bryan as plaintiff, by summons dated 29th August, 1872, against R. B. Blackledge. Afterwards (it does not appear when) the summons was amended so as to make the individuals composing the firm of Murray, Ferris & Co., plaintiffs, in the place of Bryan. The complaint is filed by those individuals.

1. The first point of defence was; that at the date of the summons, the legal estate in the land was in Bryan and not in Murray, Ferris & Co., whose tittle, if any, accrued afterwards.

The facts which may be gathered from the voluminous and confused record relating to this point are these.

On 11th January, 1870, R. B. Blackledge and Pinkie, his wife, conveyed the land to certain named individuals (who are the present plaintiffs) composing the firm of Murray, Ferris & Co., by way of mortgage, to secure $2,000.

On 16th August, 1872, the plaintiffs conveyed their estate to Bryan, and on 7th June, 1873, Bryan re-conveyed to them not as individuals, but by the firm name of Murray, Ferris & Co.

It is in evidence by Bryan that the deed to him was without consideration, and that at the commencement of this suit, he held the legal estate only as the agent and trustee of the individuals composing the firm of Murray, Ferris & Co.

We are of opinion that under C. C. P., an equitable owner may maintain an action for the recovery of land, and that if the suit had been originally brought by the present plaintiffs, they could have maintained the action, notwithstanding that the legal estate was at that time in Bryan, their acknowledged trustee. The effect of the amendment was simply to make the present plaintiffs such at the commencement of the suit, and consequently if they then had an equitable title, they are entitled to recover.

By the omission to join the trustee as a plaintiff, the defendants lose the benefit of no defence, which would be available against Bryan, if they had any such.

When a change of interest takes place during the progress of a suit, the plaintiff may make the change known by a sup-

plemental complaint, by which the new owner becomes prac-
tically substituted as plaintiff for the former one.   The amend-
ment in the  present case  must be  considered as having only
the effect of a supplemental complaint, stating the conveyance
by Bryan to plaintiffs.

2. (The first  exception of defendants.)   " That the deed to
plaintiffs from defendants  was void, because no  grantees were
named therein."

This is an oversight of  defendants counsel.   The deed on p.
13 of the record shows the contrary.

Probably the counsel meant to refer to the deed from Bryan
which is made to " Murray,  Ferris & Co.," and not to the part-
ners by their individual names.

But a deed for land is not for  that reason void,  any more
than a bond  for  the payment of  money is.   It is a latent am-
biguity which may be explained by parol.   This mode of mak-
ing deeds is a careless one, and may be  insecure, but the deed
is not void.

3. That the deed from  Bryan to plaintiffs was void because
the defendants were in adverse possession of the  land when it
was delivered.

The case shows that the defendants were not in adverse pos-
session.   They had mortgaged the  lands to  plaintiff on 11th
January, 1870, and their possession was  not  adverse to plain-
tiffs, or to Bryan, the assignee of  plaintiffs.   The possession of
a mortgagor is not  adverse to his  mortgagee, so as to prevent
an assignment of  the mortgage by the latter.

4. That plaintiffs were  trustees, and  could  not purchase at
their own sale.

The plaintiffs need not, and do not, claim  any title under a
purchase at the sale by Bryan.   That sale had no effect.   It
did not operate to  extinguish the .equity of redemption in the
defendants, which for  ought that appears in  this case, still
exists.

5. " That from the evidence  and  the pleadings, it appeared
that the Hatch lands were  transferred  to the plaintiffs by mis-

take, and that therefore no title to the same passed to the plaintiffs."

On this point the jury found, in reply to the first and second issues submitted to them, that Pinkie Blackledge executed the deed to plaintiffs by mistake, supposing it did not convey the Hatch tract of land; but that her mistake was not the conse- quence of misrepresentation by the attorney of the plaintiffs.

It *seems* to be conceded, (for in this case scarce anything is clearly stated), that the description of the lands in the deed from R. B. Blackledge and wife of 11th January, 1870, in fact covered the land which Mrs. Blackledge said was included by mistake.

The only evidence tending to show any mistake was that of Mrs. Blackledge, who swore that when she executed the deed, Bryan told her that it did not cover the Hatch land, and that she executed it under that belief. Her testimony was received without objection.

The deeds themselves *seem* to furnish evidence that the in tention of all the parties to the deed of 11th of January, 1870, was to convey all the lands which Blackledge and wife had conveyed by mortgage to W. P. Moore, and which he assigned to plaintiffs. No copy of this deed to Moore is in the record. There is a deed from Moore and wife to Mrs. Blackledge, dated 6th of December, 1869, for 1,160 acres described by boundaries, but it does not clearly appear whether this deed embraces the Hatch land or not. This part of the case is left exceedingly obscure, and all ambiguities and uncertainties are to be taken most strongly against the appellants.

It does not appear that any substantial consideration was paid by Mrs. Blackledge for any of the deeds to her. It may be *supposed* that the whole object of them was to put the estate in her, so as to enable her to make the mortgage of 11th of January, 1870, to the plaintiffs, and to redeem the land for her own use by payment of the debt to them. But these things are merely evidence, and the jury found that the deed was executed by Mrs. Blackledge, under a mistake, and the

Judge disregarded their finding and gave judgment for the plaintiffs.   His Honor does not give the reason why he disregarded the finding, but we conceive it could only be upon the ground that the *only* evidence tending to support it was incompetent.   It is argued for defendants, that, supposing the evidence incompetent, the incompetency was waived by the failure of the plaintiff to object to it and by his failure to request instructions from the Court, and the jury being thus authorized to act upon it, and his Honor not having set aside the verdict upon that point as being against the weight of evidence, but having simply disregarded it, he was in error in so doing, and should have given a judgment in conformity with the fact as found by the verdict.   There would be much force in this argument if there had been *any* competent evidence upon which the verdict as to the mistake could stand.   But it would seem unjust that such a rule should prevail, when it is seen that there was no competent evidence upon which the verdict can stand.   The negligence of counsel in not objecting to the evidence ought not in such a case to be fatal.   And notwithstanding that it is not so stated, as properly it ought to have been, we must consider the action of the Judge in disregarding the verdict on the point of mistake, as in effect setting it aside and giving judgment that there was no mistake, because there was no competent evidence of any.

This brings us to the question whether the evidence of Mrs. Blackledge to vary the deed by excluding from it one part of the land which, it is here assumed, was covered by the words, was competent.

The general rule is familiar, that parol evidence of a contemporaneous agreement differing from the written one shall not be received to vary the latter as between the parties to it. It is equally well settled, that upon a bill in equity to reform a deed or other written contract on the ground of fraud or mistake, parol evidence *of facts and circumstances debars* the deed, may be received to prove the fraud or mistake.

It is also clear that under the section of C. C. P., which removes the disqualification of interest, Mrs. Blackledge was a competent witness to prove *such facts and circumstances*, as for example, misrepresentation of the contents or meaning of the deed by the attorney of the plaintiff. But it by no means follows that she was therefore competent to prove that the deed covered more land than she thought it did, and thereby to avoid the deed or have it reformed according to her intention in executing it. Her incompetency from interest was removed, but her incompetency to vary a written contract by parol remained just as it was before C. C. P. To allow her to avoid or vary the deed by her own evidence of her secret thoughts and purposes in signing it, would place all written titles to property at the mercy of the grantor and effectually repeal the statute of frauds. We do not consider the point made by counsel, that a mistake to avoid a deed must be one common to both parties. It is immaterial in the view we take of the case.

We think in a case like this, the Judge *ex mero motu*, notwithstanding any implied waiver of his client's rights by the plaintiff's attorney, should have instructed the jury that the evidence of Mrs. Blackledge was incompetent for the purpose for which it was offered. Proof of a parol admission by an owner of land that he does not own it is inadmissible on a question of title, and much less can the mere acquiesence by his attorney in a suit of incompetent evidence in derogation of his title bind him.

We think there is no error in the judgment below.

PER CURIAM.                    Judgment affirmed..