S. A. TAYLOR et als. v. A. J. EATMAN, et als.

*Deed—Consideration—Husband and Wife—Conveyances Fraudulent as to Creditors and Purchasers—Notice—Registration—Powers.*

1. The duty of maintainance which a husband owes to his wife is a sufficient consideration for a voluntary deed of land made by him to her, and a court of equity will sustain such a conveyance, although it is void at law.

2. Where a husband makes a gift of land to his wife, without any valuable consideration, but it is admitted he had no fraudulent intent, and he retains property sufficient to pay all of his debts in existence at the time of the gift, it is not fraudulent as to creditors.

3. To make a deed fraudulent as to subsequent purchasers, such purchaser must have paid *full value* for the land, and must also have purchased without notice of the prior voluntary conveyance.

4. The registration of the prior voluntary deed is notice to the subsequent purchaser.

5. A *feme covert*, who is the donee of a power of appointment, either collateral, appurtenant or in gross, may execute the power without the consent of her husband, and she may even execute it in his favor.

6. Although it is generally necessary in deeds or wills, which are intended to execute powers of appointment, to refer to and recite the power, yet this is not necessary when the act itself shows that the donee had in view the subject of the power at the time, or when such deed or will would be a nullity, unless allowed to operate as the execution of the power.

7. A power simply collateral cannot be conferred upon one who is a stranger to the consideration, except by a deed which operates by transmutation of possession.

8. The rule, that in conferring a power, it is necessary to create a seizin in some one commensurate with the estate, which shall be ready to serve the use when created by the appointment, only applies when the donee of the power has no interest in the land.

9. The owner of an equitable estate may bring an action in the nature of ejectment, under The Code system of procedure.

(*Liles* v. *Flemming*, 1 Dev. Eq., 185; *Elliott* v. *Elliott*, 1 Dev. & Bat. Eq., 57; *Arnett* v. *Wanett*, 6 Ired., 41; *Hiatt* v. *Wade*, 8 Ired., 340; *Smith* v. *Smith*, 1 Jones, 135; *Hogan* v. *Strayhorn*, 65 N. C., 279; *Stroud* v. *Morrow*, 7 Jones, 463; *Condry* v. *Cheshire*, 88 N. C., 375; *Murray* v. *Blackledge*, 71 N. C., 492, cited and approved).

CIVIL ACTION, to recover land, tried before *Shepherd, Judge,* at Spring Term, 1884, of WILSON Superior Court. His Honor gave judgment for the plaintiff upon the facts agreed, and the defendant appealed.

*Messrs. Connor & Woodard,* for the plaintiff.
*Mr. G. V. Strong,* for the defendants.

ASHE, J. The parties submit the questions arising on the pleadings upon the following case agreed:

1. For a long time previous to the 5th day of March, 1873, Hayman Eatman was seized of a tract of land in Wilson county containing four hundred and fifty acres more or less.

2. That on the said 5th day of March, 1873, the said Hayman Eatman, for the consideration set out in the deed (the love and affection for his wife Chacey Eatman, and for better sustenance, to live comfortably and be better cared for in her affliction, and the further sum of one hundred dollars in hand paid), executed to his wife Chacey Eatman, without words of inheritance, a deed conveying to her one hundred and fifty-six acres of said land embracing nearly all of the arable lands, and all of the appurtenances thereto belonging, to dispose of at her death as she may think proper, by deed or will, to whomsoever she chooses to make her heirs of her estate.

3. The said Chacey Eatman, on the 26th of April, 1873, made her will, devising said 156 acres to the said Hayman Eatman for life, and then to the plaintiffs.

4. The said Chacey Eatman died in August, 1873, and said Hayman Eatman died June 19th, 1883.

5. That at the time of the execution of the said deed by Hayman Eatman to said Chacey Eatman he had no children by the said Chacey Eatman, but had nine children by a former marriage.

6. At Spring Term, 1867, of the Superior Court of Wilson county, a judgment was rendered in favor of George C. Short against the said Hayman Eatman for the sum of seventy-five dollars, with interest from the 1st of September, 1857, and for costs, $10.75, which was duly docketed in said county on the ...... day of ...... ........ 18..., which said judgment was taken up by the defendant Alsey J. Eatman on the 22nd of January, 1879.

7. At the time of the execution of said deed by Hayman Eatman to Chacey Eatman, there was a mortgage on the said tract of 450 acres, executed by said Hayman Eatman to secure the sum of three hundred and fifty dollars, which the said A. J. Eatman took up.

8. On the 30th of January, 1875, the said Hayman Eatman executed a mortgage on the said 450 acres to Rountree, Baker & Co., to secure the payment of $266.62 with interest from said date at 8 per cent. On the 26th of February, 1875, the said Hayman Eatman executed a mortgage to Branch & Co., on the said 450 acres, to secure a note of $262.62, payable to Rountree, Baker & Co., and by them transferred to Branch & Co., being the same debt above set forth, and to secure the further sum of $48.90 due to said Branch & Co., and the sum of $50 due to R. G. Barham, the last two sums carrying interest from said 26th of February, 1875, at 8 per cent., which said mortgages were taken up by the said Alsey J. Eatman.

9. That on the 20th day of November, 1875, the said Hayman Eatman executed to the said Alsey J. Eatman a mortgage on the said 450 acres of land to secure the sum of nine hundred dollars with interest, which constituted all of his indebtedness to A. J. Eatman, from said date at 8 per cent.

10. On the 28th of March, 1879, the said Hayman Eatman conveyed to the defendant Alsey J. Eatman in fee simple the whole of said tract of 450 acres for the consideration of one thousand dollars, being a release of his equity of redemption in said land. That at the time of the execution of the mortgage and the deed of the 28th of March, 1879, the 300 acres reserved by Hayman Eatman was worth more than his indebtedness.

11. That at the time of the aforesaid deed by Hayman Eatman to Chacey Eatman, his wife, the balance of said tract of land not conveyed to said Chacey was worth more than his then indebtedness.

12. That said Hayman Eatman owned no other property than the 450 acres of land aforesaid, except some personal estate of small value.

If the Court shall be of opinion upon the foregoing facts that the plaintiffs are entitled to recover the said land, to-wit: the 156 acres conveyed as aforesaid to Chacey Eatman, judgment shall be rendered for the possession thereof in favor of the plaintiffs, and for costs against the defendant. If the Court shall be of opinion in favor of the defendant, judgment shall be rendered accordingly and for costs.

The defendant A. J. Eatman resisted the plaintiffs' recovery on the following grounds:

1. That the deed of March 5th, 1873, from Hayman Eatman to his wife, was void.

2. That the deed will not be sustained in equity, because there is no valuable consideration to support it, and it is fraudulent as to creditors and purchasers.

3. The will is not a good execution of the power, because it does not refer to it, or profess to be made pursuant to it.

If this was an action purely at law, there can be no doubt the deed made by Hayman Eatman to his wife, Chacey Eatman, would, as contended by the defendant, be void. But the action is in a court of blended law and equity jurisdiction, and although the deed may be void at law it still may be sustained in equity, especially so when it is made upon a meritorious consideration, and such must be regarded as the consideration in the deed from Hayman Eatman to his wife. It declares the consideration to be " for the love and affection, for her better sustenance, to live comfortably and to be cared for in her affliction, and the further sum of one hundred dollars in advance or to me in hand paid." The consideration is not only meritorious, but valuable, and it is such a consideration as a court of equity will sustain.

In *Liles* v. *Fleming*, 1 Dev. Eq., 185, it was held that a post nuptial agreement made upon sufficient consideration between husband and wife, will be enforced in equity, and in the case of *Elliott* v. *Elliott*, 1 D. & B. Eq., 57, Chief Justice Ruffin, speaking for the court, said, " as the contract is void at law, the case in this court must always be that of an application to aid a defective conveyance. The wife cannot have that assistance unless she shows herself to be *meritorious*; and shows further a clear intention, that what was done should have the effect of divesting the interest of the husband, and of creating a separate estate for her, which she should have the immediate power to dispose of as she chose; and the estate thus intended for her, was but a reasonable provision." The very terms in which the consideration in this deed are couched, shows that the husband considered her meritorious, and the fact that he acknowledged the execution of the deed with the view to its registration, shows the *clear intention* of divesting his title and *creating a separate estate in her*.

In Indiana it is held that whenever a contract would be good at law if made by a husband with trustees for his wife, that contract will be sustained in equity when made by the husband and wife without the intervention of trustees. *Sims* v. *Rickets*, 35

Black. Rep., (Ind.) 181. In *Hunt* v. *Johnson*, 44 N. Y., 27, it is held: "The duty of maintainance which the husband owes to his wife, is sufficient consideration for a voluntary deed of land made by him to her, and a court of equity will sustain such a conveyance, though void at law;" and in *Sheppard* v. *Sheppard*, 7 John., ch. 57, where the consideration of the deed was for *natural affection* and *to make sure maintainance* for the wife of the donor, the consideration was held to be *very meritorious*, and the deed on that ground sustained.

These authorities dispose of the question as to the validity of the deed made by Hayman Eatman to his wife, as conveying to her an equitable interest in the land described in the deed—unless it be void against creditors and subsequent purchasers, as contended by the defendants. It is admitted that at the date of that deed, and the deed made by Hayman Eatman to the defendants of date 20th November, 1879, the three hundred acres was worth more than his indebtedness. It was not pretended that the deed to Chacey Eatman was made with a fraudulent intent—and conceding it to have been only a voluntary deed, it is not void as against creditors, if the donor retained at the time property sufficient to pay his then indebtedness, out of which the claims of the creditors might be satisfied. *Arnett* v. *Wanett*, 6 Ired., 41; *The Code*, sec. 1547, Act 1840, ch. 28, secs. 3, 4. And as to the contention that the deed was void against subsequent purchasers, the act of 1840, ch. 28, secs. 1, 2, *The Code*, sec. 1546, under which the defendant undertook to impeach the deed, provided that no person shall be deemed a purchaser within the meaning of the act, unless he purchases the land for the full value thereof, without notice at the time of his purchase, of the conveyance by him alleged to be fraudulent. This is the construction given to the act by the Court in *Hiatt* v. *Wade*, 8 Ired., 340. The deed from Eatman to his wife was duly registered, and the registration affected the defendant with notice, and it being agreed that the 300 acres, exclusive of the 150 acres conveyed by the deed to Chacey Eatman, was worth more than the indebtedness of Hay-

man Eatman at the time of his release to the defendant, he was not a purchaser for full value; so that, not being a purchaser for full value and without notice, the deed was good as to him.

But it is further insisted by the defendants that the will made by Chacey Eatman was not a good execution of the power, because it does not refer to it or profess to be made pursuant to it.

As a general rule, in executing a power, the deed or will should regularly refer to it expressly, and it is usually recited; yet it is not necessary to do this, if the act shows that the donee had in view the subject of the power at the time. 2 *Washburn on Real Property*, (4th Ed.), 658.

A will or deed is held to be a good execution of a power, when there is a reference in the will or deed to the power, or when there is a reference to the property which is the subject on which it is to be executed, and when the provision in the will or instrument executed by the donee of the power, would otherwise be ineffectual or a mere nullity, or would not have operation except as an execution of the power. *Ibid.*, 659. The same doctrine is enunciated by Chancellor Kent, in his *Commentaries*, vol. 4, margin page, 334; and to the same effect are *Amory* v. *Meredith*, 7 Allen, 397; *Blagge* v. *Miles*, 1 Story, 426.

The last of the above rules applies appositely to the case. Chacey Eatman, although a *feme covert*, was competent to execute a power, whether collateral, appurtenant or in gross, without the concurrence of her husband. She may execute it even in his favor. 2 *Washburn on Real Property*, (4th Ed.) 653-4. But as a *feme covert* she had no right to make a devise of real property, and especially of the land conveyed to her by her husband's deed—for it only conveyed to her a life estate. Her will, therefore, would have been inoperative except as an execution of the power, and for that purpose will be sustained in equity. The defendants' counsel relied upon the decision in the case of *Smith* v. *Smith*, 1 Jones, 135, as enunciating a principle fatal to the plaintiffs' action, but that case is distinguishable from this, in

that there the power was conferred upon a stranger, and, as explained by Chief Justice Pearson, in *Hogan* v. *Strayhorn*, 65 N. C., 279, it was an attempt on the part of the donor, by deed of bargain and sale, or covenant to stand seized, to create a power of sale to one who was a stranger to the consideration, and that the power could only be created by a conveyance operating by trans-mutation of possession.    The Chief Justice said: "The court was not able to give effect to it as a deed under the statute of 1715, because there were no words of conveyance to the stranger, who was to exercise the power.    In our case that difficulty is not presented, for the land is given to Laws to have and to hold to him and his heirs, and the ceremony of livery of seizin being dispensed with, the deed operates to pass the title under the act of 1715, although it cannot take effect as a deed of bargain and sale for the want of a valuable consideration."    But in our case there was a valuable consideration, and the deed from Eatman to his wife was drawn in proper form to convey the estate directly to her, and according to that decision and others of a like effect, it was immaterial in this case whether the deed was drawn in form as a bargain and sale, a covenant to stand seized, or a feofment under the act of 1715, for if the court cannot give operation to it in one form it will in another, "*ut res magis valeat quam pereat.*" So it will be seen there is nothing in the case of *Smith* v. *Smith* that militates against the validity of the deed from Eatman to his wife.

The defendants' counsel further contended that at the time of executing the deed from Hayman Eatman to his wife Chacey, the land was subject to a mortgage, and the donor had only an. equity of redemption, and his deed passed only an equitable estate to the donee; whereas, it was necessary in conferring a power, to create a seizin in some one which shall be ready to serve the use when created by the appointment, and the seizin must be commensurate with the estate authorized to be created under the power.    But this it seems only applies when the donee of the power has no interest in the land conveyed.    For it has

been held by this court that one who is only a tenant for life may execute a power of appointment to an estate in fee simple. *Stroud* v. *Morrow*, 7 Jones, 463 ; *S. P.*, 1 *Sugden on Powers*, 44–45. This case differs entirely from *Smith* v. *Smith*, *supra*.

Here there was a transmutation of possession, and the donee of the power had what in equity is regarded as a freehold estate, and although Hayman Eatman, at the time of his conveyance to his wife, had only an equity of redemption, it is treated in equity as a continuance of his old estate when the mortgagor remains in possession, subject to the mortgagee's pledge for repayment. It remains subject to the ordinary incidents of the estate, it passes in the same course of devolution, it might be devised, settled or conveyed in the same way, and as between the mortgagor and third persons, the mortgagor is to be considered as possessed of the *freehold*. *Adams Eq.*, 113–114, and note 1 and cases there cited. This we think was a sufficient seizin to clothe the donee, Chacey Eatman, with the power of appointment, and the power was properly executed by her will in the plaintiffs, and Hayman, as her appointee for life, had no right to convey to the defendant a greater estate than for his own life.

It was stated in the case agreed, that the defendant took up the judgment and the mortgage that were in force when the deed was made by Hayman Eatman to his wife, and the defendants contend it was by assignment, which substituted him to the rights of the judgment creditor and the mortgagee. But we do not so understand it. We think if he had purchased the judgment and the mortgage debt it would have been so stated in the case agreed, and when it is not so stated, but that he *took them up*, we can only give to the words their meaning in the ordinary acceptation, which is that he *paid them off* and by that means the mortgage was discharged, the defendant became a creditor without security, and the estate of the plaintiffs was relieved from the lien of the mortgage, and this view is strongly supported by the fact that in 1879 the defendant took a mortgage from Hayman

39

Eatman to secure all the moneys he had advanced for him, which must have been founded upon a settlement up to that date.

How, then, stands the case? The plaintiffs have acquired a pure, disencumbered, equitable estate in the 156 acres of the land. The defendant, by the mortgage and release made to him in 1879 by Hayman Eatman, became the owner in fee of the whole 450 acres, but of the 156 acres subject to the equity of the plaintiffs, for he was not a purchaser for full value, and had notice of the equitable title of the plaintiffs. In such a case the plaintiffs had their election of two remedies, the one to call in equity, upon the defendants to convey the land to them; or to bring, as they have done, an action at law to recover the possession of the land, for it is now held that a party may recover in an action in the nature of ejectment upon an equitable title. *Condry* v. *Cheshire*, 88 N. C., 375; *Murray* v. *Blackledge*, 71 N. C., 492.

Our conclusion is there was no error.

The judgment of the Superior Court must be affirmed.

No error.                    Affirmed.