A. J. WALTON et al. v. WILLIS PARISH and wife.

*Husband and Wife—Deed—Fraudulent Conveyance—Meritorious Consideration—Evidence of Fraud—Registration.*

1. Where a marriage took place, and a deed was made between husband and wife prior to 1868, it is governed by the law as it then existed, and is not affected by the changes in the marital relations brought about by the Constitution of 1868, and the statutes passed in pursuance thereof, although the deed was not registered until 1884.

2. Before the Constitution of 1868, a deed directly from the husband to the wife was void at law, but it would be upheld in equity as a defective conveyance, if the wife could show herself to be meritorious; that is, when it was the intention of the husband to divest the estate from himself, and to create a separate estate for her, which she should have the immediate power to dispose of; and that the estate thus intended for her, was a reasonable provision.

3. All gifts from a husband to his wife, will be upheld *inter se*, and as against all persons claiming under them, and such gifts are good against existing creditors, if the husband retain property sufficient to pay his debts, and are only void if made with a fraudulent intent.

4. Where, in 1862, a husband was about to enter military service, made a deed to his wife of certain land, for her support, but retained sufficient property to pay all of his existing debts; *It was held*, that the consideration was a meritorious one.

5. Where a deed was made from husband to wife in 1862, for her support which it was alleged was lost until 1884, when it was registered, and in the meantime, the husband lived on the land, and no efforts were made to set up the lost deed; *It was held*, strong evidence of fraud, as against subsequent creditors of the husband.

6. Such deed relates back after registration to its date, and is not a marriage settlement, which is only valid from its registration.

7. Where husband and wife are jointly sued for the wife's land, the plaintiff is not entitled to a judgment for the husband's interest upon his failure to answer.

(*Elliott* v. *Elliott*, 1 Dev. & Bat. Eq., 57; *Garner* v. *Garner*, Busb. Eq., 3; *Paschall* v. *Hall*, 5 Jones' Eq., 109; *Warlick* v. *White*, 86 N. C., 141; *Smith* v. *Smith*, Winston's Eq., 30; *Liles* v. *Liles*, 1 Dev. Eq., 185; *Taylor* v. *Eatman*, 92 N. C., 601; *Cecil* v. *Smith*, 81 N. C., 285; *Taylor* v. *Apple*, 90 N. C., 343, cited and approved).

CIVIL ACTION, tried before *Philips, Judge,* and a jury, at August Civil Term, 1886, of the Superior Court of WAKE County.

This action, commenced on January 20th, 1885, upon an averment of title in the plaintiff, is to recover possession of the tract of land described in the complaint, and damages for the withholding, and the defendant Willis Parish, makes no answer thereto. The *feme* .defendant, Mary, his wife, does answer the allegations of the complaint, and both denies the plaintiff ownership and asserts title in herself. The plaintiffs derive title under and by virtue of an execution issued on a judgment recovered at February Term, 1882, of Wake Superior Court, by Andrew Syme, administrator, against the defendant Willis, a sale thereunder, and the Sheriff's deed to B. B. Lewis, Junior, purchaser, and a succession of deeds thence to the plaintiffs, Walton, mortgagor, and Leach, mortgagee. The judgment was rendered on debts contracted in 1865 and 1866, in the aggregate sum of $926, besides interest thereafter. The defendant Mary deduces her title and claim, from a deed made on June 7th, 1862, to her by her husband, with two attesting witnesses, who died before the probate thereof, and the same was acknowledged and registered on December 10th, 1884, shortly before the bringing of the present suit. The said Willis testified at the trial, to the execution of the deed and the circumstances under which it was made, as follows:

That at the time he owed no debts; had been married since 1854, and had two children, respectively of three and two years of age, and his wife was then pregnant; that he got some cattle, sheep, horses, household and kitchen furniture through her; that soon after making the deed he was conscripted and put in the military service of the Confederate States, and remained in the army two years, and that his personal property in 1862 was more in value than the land was assessed at for taxation.

The defendant Mary, examined on her own behalf, stated that the deed was delivered to her the day it was signed; that she placed it in her trunk, and after her husband left, she took out what was in it, with other papers, and carried them to her father's, who took possession of them; that she never saw the deed afterwards

until about three years ago; it had slipped down between the back of his desk and the drawer, and when found she placed it in her trunk again; and that herself and family have been living on the land ever since the making of the deed.

The only issue upon the trial, of which the foregoing facts were given in evidence, was: "Is the plaintiff the owner of the land?" and the plaintiff asked a series of instructions, to-wit:

I. Upon all the evidence, the plaintiff is entitled to recover;

II. The paper executed by Willis Parish to his wife is void as to the plaintiff;

III. If not void, it can have no operation before December 10th, 1884, the date of its registration;

IV. Plaintiff is entitled to judgment against Willis Parish by virtue of the sale of what interest he had in the premises.

The Court declined to give these instructions, and charged the jury as follows:

"The defendant Mary Parish seeks to avoid the plaintiffs' recovery, by showing that on the 7th June, 1862, her husband executed a deed conveying to her the lands in controversy. The plaintiffs contend that as to them the deed is absolutely void. The deed made by Willis Parish to his wife Mary, in June, 1862, is void at common law, the husband and wife being treated as one person. But if at the time the deed was made and delivered, the defendant, Willis Parish, not being indebted, had the honest purpose to make a reasonable provision for his wife, Mary, out of his estate, and to create a separate estate for her, and not with any fraudulent intent to hinder, delay or defraud, the deed would be upheld by a Court of equity in favor of the wife, and the plaintiffs would not be entitled to recover. But the fact that the deed was executed in 1862, and the husband, Willis Parish, after his return from the army, lived on the land with his wife, and no registration of the deed was made, and no effort to substitute a new deed for the lost deed, and no notice was given that the wife claimed the land, is strong evidence of a fraudulent intent, and must be rebutted by the claimant, Mary Parish, else the plaintiffs would be entitled to recover."

Plaintiffs excepted.

The jury returned a verdict for defendant, on which there was a judgment in their favor.

Plaintiffs moved for a new trial. Motion denied. Appeal by plaintiffs.

*Mr. J. H. Fleming*, for the plaintiffs.
*Mr. E. C. Smith*, for the defendants.

SMITH, C. J. (after stating the facts). The instrument made in the year 1862, in the form of a deed of conveyance as to its operation and effect, is governed by the law then in force, and is unaffected by the changes in the marital relations since made under the Constitution and by statute. It is of course inoperative in passing the legal estate in the land, because of the legal unity of the parties, between whom no contract, executory or executed, could be entered into. If it has any efficacy, it must be found in the principles and rules recognized and enforced in equity.

"In England," says RUFFIN, C. J., "it has been certainly held that a gift from the husband to the wife, without the intervention of a trustee, may be made under such circumstances as to render it valid in equity, and induce that Court to constitute the husband himself the trustee. * * * As the contract is void at law, the case in this Court must always be that of an application to aid a defective conveyance. The wife cannot have that assistance, unless she shows herself to be meritorious ; and shows further, a clear intention that what was done should have the effect of divesting the interest of the husband, and of creating a separate estate for her, which she should have the immediate power to dispose of as she chose ; and that the estate thus intended for her, was but a reasonable provision." *Elliott* v. *Elliott*, 1 D. & B. Eq., 57. "It has been long settled," says BATTLE, J., "that a husband may, after marriage, make gifts or presents to his wife, which will be supported in equity against

himself and his representatives." *Garner* v. *Garner*, Busb. Eq., 3. The same language is repeated in *Paschall* v. *Hall*, 5 Jo. Eq., 109. In a more recent case, RUFFIN, J., speaking for the Court, and asserting the invalidity of such a deed at common law, proceeds to say : " But a Court of Equity, having a greater regard to the intention and convenience of the parties, and treating the deed merely as a defective conveyance, will uphold it in favor of the wife, if a clear and present purpose on the part of the husband to make the gift, can be seen, and the gift itself appear to be no more than a reasonable provision for the wife." *Warlick* v. *White*, 86 N. C., 141. To same effect see *Smith* v. *Smith*, Winst. Eq., 30 ; *Liles* v. *Fleming*, 1 Dev. Eq., 185. The same doctrine has been held in *Deming* v. *Williams*, 26 Conn. 226 ; *Bunch* v. *Bunch*, 26 Ill., 401 ; *Johnson* v. *Hines*, 31 Geo. 720 ; *Wells* v. *Wells*, 35 Miss., 638 ; *Shepard* v. *Shepard*, 7 John, Ch., 57. There were no creditors of the husband at the time of making the deed, though he did incur an indebtedness afterwards, to pay which the land was sold under execution, and conveyed to the purchaser for an inconsiderable sum, and thence title has passed to the plaintiffs. The plaintiffs insist that the conveyance will not be upheld as to them. This very point was passed on in the recent case of *Taylor* v. *Eatman*, 92 N. C., 601, in the opinion in which ASHE, J., uses this language : " It is not pretended that the deed to Chacy Eatman was made with a fraudulent intent " (an intent negatived in the jury finding in the case before us), " and conceding it to have been only a voluntary deed, it is not *void as against creditors*, if the donor retained at the time, property sufficient to pay his indebtedness, out of which the claims of the creditors might be satisfied." The principle is thus enunciated in a recent work, with a reference to cases in its support : " All gifts from a husband to his wife are good *inter se*, and *against all persons claiming under them ; and good against all persons, if he is not in debt at the time ;* but such gifts are voidable as to existing creditors, if their rights are not secured, and as to subsequent purchasers

without notice, and creditors, if made with intent to delay or defraud them." Kelly Cont. of Mar. Women, Chap. 6, §9, at page 137.

The "subsequent purchasers" are defined in our statute, The Code, §1646, to be such "who shall purchase for the full value thereof the same lands," &c., without notice. *Taylor* v. *Eatman, supra.* The sale under execution was for $50, of a tract of 119 acres, which, with a piece of 20 acres sold off, was in 1862 returned at $313 for taxation, and estimated by the defendant Mary to be worth in 1882 $12 per acre.

The next enquiry is, as to the meritorious quality of the consideration of the conveyance. The relations of the husband and wife were such as became them, and she had been true and faithful to her marital duty. Her health was not good, and he was about to embark in a perilous military service, from which a return was uncertain. The care and support of three helpless children was about to devolve upon her. He was not in debt, but had received and used personal goods belonging to his wife. Under these circumstances, in the presence of two witnesses, the deed was made, he still reserving, (as he says,) personal property greater than the assessed value of the land. We think these do constitute a meritorious consideration for the provision thus made for the support of his wife and children, when he could not otherwise contribute to it. It is true, the evidence of a fraudulent intent was *strong,* as the Court told the jury, and must be rebutted by the defendant Mary, or the plaintiff would be entitled to a verdict. No more emphatic charge could be asked for, and the verdict declares the rebuttal sufficient.

Plaintiffs' counsel contended also, that the deed was ineffectual until registration, on December 10, 1884. In this we do not concur. The deed in form is absolute, and does not belong to the class of "marriage settlements and other marriage contracts" which are void unless registered in six months after execution. The Code, §1269. The Sections of The Code, 1820 and 1821, apply to instruments entered into since the enactment, and pursuant to its provisions.

Nor is there error in refusing to charge that the plaintiffs' are entitled to recover possession of the husband by virtue of the sale under execution of his interest in the premises. The wife is defending *her own* title and possession, and this she may do though her husband is sued. *Cecil* v. *Smith*, 81 N. C., 285; *Taylor* v. *Apple*, 90 N. C., 343. The plaintiffs may take judgment by default against him, but must fail against the wife. We have treated the wife's equity to relief under the deed, as an answer to the action and to the issue submitted, upon the principle that what a Court of equity would do, will be regarded in a defence as if done.

There is no error, and the judgment must be affirmed.

No error.                                              Affirmed.